J-A23004-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| MICHAEL CARISS | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| MICHAEL MARTIN | : | No. 1 WDA 2025 |

Appeal from the Judgment Entered February 18, 2025
In the Court of Common Pleas of Westmoreland County
Civil Division at No(s):  No. 1412 of 2017

BEFORE:  PANELLA, P.J.E., McLAUGHLIN, J., and BENDER, P.J.E.

MEMORANDUM BY PANELLA, P.J.E.:          **FILED: NOVEMBER 6, 2025**

Michael Cariss appeals from the judgment entered in the Court of Common Pleas of Westmoreland County in favor of Appellee, Michael Martin. After careful review, we affirm on the basis of the trial court's well-reasoned November 26, 2024 opinion.

The trial court aptly summarized the factual and procedural history of this matter as follows:

> [This breach of contract action] concerns the relationship between [ ] Cariss and [ ] Martin, wherein Martin performed various handyman services at Cariss's home. The case came to the court of common pleas on an appeal by [Cariss] from arbitration. The operative amended complaint containing one apparent count was filed by Cariss on August 3, 2020, and [] was answered by Martin. The case proceeded through discovery and pre-trial proceedings, and the one-day [non-jury] trial was heard on April 4, 2024. Upon the conclusion of the hearing, findings of fact and conclusions of law were requested from the parties and timely submitted to [the] court.

At trial, testimony was provided by both parties to the case. Cariss testified first, stating that he has known Martin since about 1993 through his church, and that Martin began working for him in the summer of 2013. Cariss paid Martin $6.00 an hour in cash to do odd jobs around his house in East Vandergrift, Pennsylvania. Over the course of about a year and a half, Martin performed work on Cariss's back porch, roof, downspouts, basement[,] and hot water tank, addressing issues as they [arose] on the property. Cariss testified that he paid Martin in cash at the end of each workday.

Martin subsequently began work on the chimney of the house, and Cariss testified that Martin demolished some part of one chimney and then boarded over a portion of the roof that was left exposed. Cariss stated that Martin did not agree to come back the next spring [to] finish repairing the chimney, and [consequently,] he had to pay a third party to finish it. Cariss stated that the hole in the roof caused significant leaking over the winter. He testified that he paid a third party $1,735.00 in either 2014 or 2015 to fix the roof.

Cariss testified that Martin additionally damaged his roof by inadvertently puncturing some of the shingles[, which] a third party repaired [ ] at a cost of $1,200.00. [Cariss] also introduced a list of tools purchased from [various] hardware stores totaling $1,338.75 that he claims [] Martin purchased using his lines of credit[.] Cariss testified that Martin did not reimburse him for these tool purchases, and Cariss submitted a spreadsheet that he created, [purporting] to show the purchases along with receipts. Cariss additionally stated that it cost him $800.00 to [have] a tree cut down after Martin failed to do so, despite cutting down other trees [on the property].

Cariss claimed that Martin convinced him to purchase $1,559.25 worth of gravel that he has no use for. He stated that it would cost at least $4,000.00 to [have] the gravel removed, although the estimate that he entered into evidence [indicated a cost of] $3,500.00. …

On cross-examination, Cariss stated that Martin did not sign any contract with him, and that any agreements they had were oral. Martin did not provide Cariss with any time or price estimates for any project[, and] he was paid daily for the work done that day. Cariss testified that he did not deduct from his estimates the cost that he would have paid to Martin to complete the work [that] he

[requested] compensation for in his complaint. His testimony also indicated that he [was] not entirely aware [] which [of the] tools listed on his exhibit [ he was] requesting compensation for. …

Martin also provided testimony to the court. [Martin] testified that he started to work for Cariss in 2013 when [Cariss] asked him to fix a water leak, and that he began doing more work from that point on. He stated that he was paid daily at $6.00 per hour, and that they never agreed to firm time or project commitments. Martin testified that, when he was paid at the end of each day, … Cariss would deduct [any amount Martin owed for tools purchased on credit] from his daily cash pay.

[ ] Martin testified that Cariss worked from home and was present at all times to observe his work. He stated that Cariss approved of the work he had done and all major purchases, including the purchase of the [ ] gravel. Martin testified that he and Cariss had a disagreement about Cariss's neighbor, and that he stopped working for him in January of 2015. After they [ended] their working relationship, Martin testified that Cariss never requested to be reimbursed for any tools, never requested any money, and never complained about the quality of the work that was done.

Trial Court Order and Opinion, 5/29/24, at 1-4 (prefixes, headings, and record citations omitted).

On May 29, 2024, the trial court issued its verdict and simultaneously purported to enter judgment in favor of Martin upon determining that Cariss failed to meet "his burden of showing that the parties entered into an oral contract regarding the overall scope of work on his property." *Id.* at 5. On June 10, 2024, Cariss filed a motion for post-trial relief seeking entry of judgment in his favor because "the non-jury verdict was the result of errors of law and/or fact, and/or an abuse of discretion[,] and/or violation of applicable standards[.]" Post-Trial Motion, 6/10/24, at 2 (unpaginated). Cariss prematurely filed a notice of appeal, and on September 27, 2024, this Court

entered an order quashing the appeal and vacating the trial court's May 29th order for purporting to enter judgment simultaneously with the verdict before the ten-day period for filing post-trial motions expired. ***See Jenkins v. Robertson***, 277 A.3d 1196 (Pa. Super. 2022).

On November 26, 2024, the trial court issued an opinion and entered an order denying Cariss's post-trial motion. Cariss filed a notice of appeal from the denial of his post-trial motions on December 26, 2024.[1] On January 31, 2025, Cariss filed a court-ordered concise statement of errors complained of on appeal, pursuant to Pa.R.A.P. 1925(b), in which he alleged that the trial court erred in entering a verdict in favor of Martin and denying Cariss compensation for the tools purchased on credit, the damage to his roof, trees, and shingles, and "the damage caused by the dumping of limestone and gravel on [his] property[.]" Concise Statement of Matters Complained of on Appeal, 1/31/25, at ¶¶ 1-5. On March 13, 2025, the trial court filed its opinion, pursuant to Pa.R.A.P. 1925(a), in which it addressed Cariss's appellate issues

---

[1] On February 6, 2025, this Court directed Cariss to praecipe the trial court prothonotary to enter judgement on the decision. Cariss complied, and judgment was entered on February 18, 2025. We treat his appeal as timely filed after judgment was entered. ***See Landis v. Wilt***, 222 A.3d 28, 33 (Pa. Super. 2019) (treating premature notice of appeal filed from denial of post-trial motions as timely filed appeal from final judgment); ***see also*** Pa.R.A.P. 905(5) ("A notice of appeal filed after the announcement of a determination but before the entry of an appealable order shall be treated as filed after such entry and on the day thereof.").

by referencing the factual findings and legal analysis proffered in its opinions dated May 24, 2024 and November 26, 2024.

On appeal, Cariss raises the following question for our review: "Whether the[] trial court erred in entering a non-jury verdict for [Martin]?" Appellant's Brief, at 12 (unnecessary capitalization omitted).

Cariss challenges the judgment entered by the trial court after it denied his post-trial motion seeking entry of judgment notwithstanding the verdict ("JNOV").

> When reviewing the denial of post-trial relief following a non-jury trial, we are to determine only whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in any application of the law. The findings of fact of the trial judge must be given the same weight and effect on appeal as the verdict of a jury.

***Gasbarre Products, Inc. v. Smith***, 270 A.3d 1209, 1217 (Pa. Super. 2022) (quotation marks and citations omitted). Moreover,

> [a] JNOV can be entered upon two bases: (1) where the movant is entitled to judgment as a matter of law; and/or, (2) the evidence was such that no two reasonable minds could disagree that the verdict should have been rendered for the movant. When reviewing a trial court's denial of a motion for JNOV, we must consider all of the evidence admitted to decide if there was sufficient competent evidence to sustain the verdict. In so doing, we must also view this evidence in the light most favorable to the verdict winner, giving the victorious party the benefit of every reasonable inference arising from the evidence and rejecting all unfavorable testimony and inference. Concerning any questions of law, our scope of review is plenary. Concerning questions of credibility and weight accorded the evidence at trial, we will not substitute our judgment for that of the finder of fact. If any basis exists upon which the trial court could have properly made its award, then we must affirm the trial court's denial of the motion for JNOV. A JNOV should be entered only in a clear case.

*Coryell v. Morris*, 330 A.3d 1270, 1277-78 (Pa. Super. 2025) (brackets and citation omitted).

Cariss argues that the trial court erred in denying him compensation in the amounts of $1,441.75 for tools purchased using his line of credit, $1,735.00 for roof repairs, $800.00 for tree removal services, $1,200.00 to replace damaged shingles, $1,559.25 for the purchase of gravel and limestone, and $4,000.00 to remediate damage he attributes to the presence of the gravel and limestone on his property. *See* Appellant's Brief, at 14-17.

We begin by noting that, pursuant to our Rules of Appellate Procedure, the argument advanced in an appellant's brief must include "discussion and citation of authorities as are deemed pertinent." Pa.R.A.P. 2119(a). The arguments advanced by Cariss in his brief are undeveloped, as he fails to cite pertinent legal authority to support his position or substantiate his right to relief. *See Kalili v. State Farm Fire and Casualty Company*, 330 A.3d 396, 406 (Pa. Super. 2024) ("Arguments not appropriately developed" are waived and "include those where the party has failed to cite any authority in support of a contention.") (citation omitted). Accordingly, we could find waiver of Cariss's claims and dismiss his appeal on this basis. Pa.R.A.P. 2101 ("Briefs … shall conform in all material respects with the requirements of these rules … and, if the defects are in the brief … of the appellant and are substantial, the appeal … may be quashed or dismissed."). However, because the deficiencies in Cariss's brief do not hinder our ability to conduct meaningful

appellate review, we decline to find waiver. ***See Commonwealth v. Midgley***, 289 A.3d 1111, 1118 (Pa. Super. 2023) ("[W]e will not find waiver if the appellant's failure to provide citation to legal authority or develop an issue does not impede our ability to conduct meaningful appellate review.") (internal quotation marks, brackets, and citation omitted).

After our review of the record, the briefs of the parties, and the cogent opinion of the Honorable Harry F. Smail, Jr. dated November 26, 2024, we discern no error by the trial court in denying Cariss's post-sentence motion and entering judgment in favor of Martin. Cariss fails to demonstrate that he is entitled to judgment as a matter of law or that no two reasonable minds could disagree that the verdict should have been rendered in his favor based on the evidence elicited at trial. ***See Coryell***, 330 A.3d at 1277. Rather, Cariss disputes the trial court's determination that Martin's evidence was "more credible by far," Trial Court Opinion, 11/26/24, at 2, and impermissibly asks this Court to substitute its judgment with that of the factfinder. ***See Coryell***, 330 A.3d at 1278.

The trial court's opinion comprehensively disposes of Cariss's arguments and concludes that finding for Martin was not in error where: (1) Martin testified that any amount he owed Cariss for tools purchased on credit was deducted from his daily cash pay, and he supported his testimony with annotated paystubs; (2) Cariss did not present evidence that he contracted with Martin "to complete the entire roof/chimney job" or that he paid Martin

for work he failed to complete; (3) Martin did not breach any agreement to cut down a particular tree where "uncontested evidence" showed that Martin was paid daily for any work completed that day and the parties "did not contract for the completion of whole projects;" (4) Cariss failed to cite to any particular evidence to show that Martin damaged his roof shingles; and (5) Cariss requested, paid for, and received the gravel and limestone delivery and failed to produce any evidence to show that Martin was legally obligated to remove the stone. Trial Court Opinion, 11/26/24, at 3, 4, 5.

Accordingly, we affirm on the basis of the November 26, 2024 opinion of the Honorable Harry F. Smail, Jr., which we have attached for the convenience of the parties.

Judgment affirmed.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 11/6/2025